UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL THERIOT,<br>      Plaintiff | * <br> * <br> * | CIVIL ACTION NO. _____ |
| vs. | * <br> * | SECTION _____ |
| WAL-MART STORES, INC.,<br>      Defendant | * <br> * <br> * <br> * | MAGISTRATE JUDGE _____ |

**COMPLAINT**

I.   INTRODUCTION

1.   Plaintiff Michael Theriot, Jr., an individual with disabilities, brings this action complaining of Defendants' violations of the Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (hereafter "the ADA"). Plaintiff contends that Defendants discriminated against him on the basis of his disability. Plaintiff seeks a declaratory judgment that Defendants are in violation of these statutes, damages, and attorneys' fees and costs.

II.   PARTIES

2.   Plaintiff Michael Theriot, Jr. is a qualified individual with a disability, as that term is used and defined in the ADA. He is a resident of Larose, Louisiana.

3.   Defendant Wal-Mart Stores, Inc. is a Delaware corporation that does business in Louisiana.

4.   As owner and operator of the Wal-Mart store located at 16759 Highway 3235 in Galliano, Louisiana, Defendant Wal-Mart Stores, Inc. was, at all times relevant to

1

this complaint, Mr. Theriot's employer, as that term is defined in 42 U.S.C. § 12111(5), and a covered entity under 42 U.S.C. § 12111(2).

### III. JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the ADA, a federal statute.

6. Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(2) since all of the events that give rise to this Complaint occurred in this district and the plaintiff is a domiciliary of this district.

### IV. FACTS

7. Michael Theriot, Jr. is a 33-year-old man who lives in LaRose, Louisiana. He has cognitive impairments and speech impairments that significantly limit his ability to read and speak.

8. Mr. Theriot received a certificate of achievement from South Lafourche High School in 2001.

9. Mr. Theriot began working at Wal-Mart in Galliano, Louisiana in 2000. At the time, his job duties primarily consisted of pushing shopping carts from the parking lot to the store.

10. Mr. Theriot obtained this job by working with a job counselor at his high school who helped him train for and find a job.

11. In 2009, Mr. Theriot requested and obtained a transfer to the Garden Center at Wal-Mart. He wanted to go to the Garden Center because the Garden Center manager, a woman named Minnie, had been helpful to him at work.

12. In order to understand and communicate with management, Mr. Theriot from time to time needs the assistance of a "job coach," an individual trained in communicating with and assisting individuals with disabilities, especially those with cognitive disabilities and communications disabilities, to learn and carry out job responsibilities.

13. Mr. Theriot's job coach, Evelyn Loggins, works at the Center, an agency that receives funding from Louisiana Rehabilitation Service, a State agency and other public funds to provide employment-related services to individuals with disabilities.

14. In 2009, Mr. Theriot requested that Wal-Mart allow him to have his job coach or another representative present at meetings with management to discuss job duties and responsibilities, to ensure that he understood any changes being made and that he had an advocate to represent his interests. Wal-Mart agreed to grant this request as a "reasonable accommodation" for Mr. Theriot's disabilities.

15. Mr. Theriot's request for accommodation was accompanied by a letter from his physician explaining why he needed this accommodation to help him communicate. When Wal-Mart agreed to provide these accommodations, this letter was placed in his employee file.

16. Despite this, in 2011, Mr. Theriot was continually called by a manager from outside the Garden Center to push shopping carts even though he had other work assignments in the Garden Center. Generally, these reassignments were made without

3

consultation with his direct supervisor, the manager of the Garden Center. They were also made without allowing Mr. Theriot to obtain the assistance of his job coach at meetings in which the job assignments were discussed.

17. On Friday, May 20, 2011, Mr. Theriot was assigned to push shopping carts from the parking lot, instead of working in the Garden Center. This assignment was given him by a manager from a department other than the Garden Center, without first consulting with Mr. Theriot's direct supervisor in the Garden Center.

18. Mr. Theriot protested, and spoke to Minnie, the Garden Center manager. Minnie gave Mr. Theriot permission to push shopping carts for two hours, until 2:00 p.m.

19. At 2:00 p.m., Mr. Theriot returned the cart key to Connie Naquin, the front-end manager at the Galliano Wal-Mart. Ms. Naquin, who was not Mr. Theriot's supervisor, instructed Mr. Theriot to continue pushing shopping carts. Though he was scared to do so, Mr. Theriot refused, because his manager had told him to return to the Garden Center at 2:00 p.m.

20. Ms. Naquin took Mr. Theriot to speak with Da-Neil Beckworth, the assistant manager. Mr. Theriot asked to have Minnie present. Ms. Beckworth refused, stating that he was an adult and should not have to have someone present with him at meetings.

21. During the meeting, Mr. Theriot tried to explain himself. Ms. Beckworth that she could not understand him and told him to "talk right." She then told Mr. Theriot that he was "terminated."

4

22. Mr. Theriot did not understand what the word "terminated" meant, so he did not leave. Ms. Beckwith grabbed Mr. Theriot's name badge from him and clocked him out.

23. Mr. Theriot began to cry. He did not understand that he had been fired, and pushed shopping carts for the rest of his scheduled shift.

24. When Mr. Theriot's mother, Sally Theriot, came to pick him up, she saw that he was upset and spoke to Ms. Beckwith. At that point, Ms. Beckwith told Sally Theriot that she had changed her mind, and Mr. Theriot was not fired.

25. Ms. Theriot asked Ms. Beckwith what had happened, and why Mr. Theriot was so upset. Ms. Beckwith responded that she did not have to speak to Ms. Theriot, because Mr. Theriot was over the age of eighteen.

26. On the following Monday, May 23, 2011, Mr. Theriot was scheduled to go to work at Wal-Mart. Because of the events of the previous Friday, he was too scared, so Ms. Theriot took him to the doctor.

27. Mr. Theriot's doctor, Michael Marcello, M.D., completed a Family Medical Leave Act request form for Mr. Theriot on May 23, 2011. Dr. Marcello diagnosed Mr. Theriot as being "mentally handicapped / emotionally upset," and gave his symptoms as "feeling insecure after not understanding his role at Wal-Mart as to answer to for work." Dr. Marcello recommended Mr. Theriot take leave from work as a result of the emotional difficulties resulting from the May 20, 2011 incident.

28. Also on May 23, 2011, Sally Theriot and Evelyn Loggins, Mr. Theriot's job coach, went to Wal-Mart. They spoke to a woman named Mary, who on information and

5

belief was an assistant manager, and asked to see the letter that was in Mr. Theriot's file regarding accommodations. Mary confirmed that the letter was in the file, and stated she was unaware that it had been there.

29. As a result of Wal-Mart's actions, Mr. Theriot was sad, scared, and angry. He suffered humiliation, anxiety, fear, and distress.

30. Mr. Theriot had previously been very proud of his work at Wal-Mart. He liked earning money. He felt that he did his job well, liked knowing that he was a hard worker, and enjoyed the compliments he received from other staff members and customers. Mr. Theriot received a certificate from Wal-Mart after he had worked at the Galliano store for five years, and another after completing 10 years of service. He hung these certificates on his bedroom wall until recently.

31. Mr. Theriot has not returned to work at Wal-Mart because of the fear and anxiety that resulted from the May 20, 2011, incident.

V.    PROCEDURAL HISTORY

32. On November 10, 2011, Mr. Theriot filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination by Wal-Mart Stores, Inc., based on the incidents described in this complaint.

33. On December 5, 2011, the EEOC issued a letter closing Mr. Theriot's complaint.

34. On December 16, 2011, Mr. Theriot, through his attorney, wrote to the EEOC, re-urging his complaint and requesting reconsideration of the decision to close his complaint.

35.    On February 12, 2012, Keith T. Hill, Field Director of the EEOC New Orleans Field Office, granted Mr. Theriot's request for reconsideration, and revoked the "Dismissal and Notice of Right to Sue" that had been issued in Mr. Theriot's case.

36.    On September 9, 2013, the EEOC issued a Notice of Right to Sue based on the fact that more than 180 days had passed since the filing of the charge.

## VI. CAUSES OF ACTION – VIOLATIONS OF TITLE I OF THE ADA

37.    Plaintiff realleges and incorporates each and every foregoing paragraph.

38.    Defendant subjected Plaintiff to discrimination based on his disability by denying him the presence of his job coach during a staffing meeting, a reasonable accommodation he had formally requested and previously received. In so doing, Defendant reasonable accommodations to the known mental limitations of its employee, Mr. Theriot, an otherwise qualified individual with a disability. 42 U.S.C. § 12112(5)(A).

### DAMAGES

39.    Plaintiff is entitled to damages to compensate him for the pain and suffering, mental anguish, and emotional distress he suffered as a result of the failure of Defendant to provide him with reasonable accommodations.

### DECLARATORY RELIEF

40.    Plaintiff is also entitled to a declaratory judgment concerning each of Defendant's statutory violations.

### ATTORNEYS' FEES AND COSTS

41.    In order to enforce his rights under the ADA, Plaintiff has had to retain counsel and is therefore entitled to recover attorney fees, costs, and expenses.

**PRAYER FOR RELIEF**

42. Therefore, Plaintiff requests that the Court:

A. Enter a declaratory judgment, specifying Defendant's statutory violations.

B. Find that Plaintiff is the prevailing party in this case and award damages, along with any attorney fees, costs, and expenses; and

C. Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Date: November 22, 2013

Respectfully submitted,

_s/ Susan Meyers_
Susan M. Meyers, La. Bar No. 29346
Advocacy Center
8325 Oak Street
New Orleans, Louisiana 70118
Telephone: 504-522-2337, ext. 138
Facsimile: 504-522-5507
smeyers@advocacyla.org

Nell Hahn, La. Bar No. 22406
Advocacy Center
600 Jefferson Street, Suite 812
Lafayette, Louisiana
(337) 237-7380, ext. 311
nhahn@advocacyla.org

ATTORNEYS FOR PLAINTIFF